800 So.2d 275 (2001)
Quinton JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-3068.
District Court of Appeal of Florida, First District.
October 12, 2001.
Rehearing Denied November 28, 2001.
*276 Nancy A. Daniels, Public Defender and Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Kenneth D. Pratt, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
Quinton Johnson, the defendant, appeals his conviction for aggravated battery. He contends that the trial court erred in allowing the state to introduce a statement he made to a police officer, without the benefit of a Miranda warning. We disagree and affirm. Although the defendant was detained briefly in the course of a traffic investigation, he was not in custody within the meaning of the Miranda decision. Consequently, the absence of a warning does not render the statement inadmissible.
The charge arose from an altercation between the defendant and Jason Clark, the alleged victim. Clark was driving to work in his truck on October 6, 1999, with his girlfriend, Stephanie Hearn. The defendant and his son were in another truck traveling in the same direction. Clark passed the defendant and his son and then apparently changed lanes too quickly in front of them. When the two vehicles came to a stoplight, each was positioned beside the other, and the defendant began yelling and cursing at Clark. He was upset that Clark had cut him off.
Clark and the defendant got out of their trucks. The defendant's son also got out and walked towards Clark with his hand in his pocket as if to retrieve a weapon. Clark got back into his truck, and, as he reached to close the door, he felt something hit him in the back of the arm. He turned to see the defendant standing in the street with a rake in his hand. Clark then grabbed a baseball bat from the cab of the truck and swung it at the rake.
A scuffle ensued, and the defendant pushed Clark up against his truck and began to choke him. While the two men were fighting, the defendant's son got a chainsaw out of the back of his truck and attempted to start it. He could not get the chainsaw started, so he put it down, walked over to Clark, and hit him with his hands. Stephanie Hearn then got out of Clark's truck, picked up the rake handle, and hit the defendant's son with it. At that point, a highway patrol officer arrived on the scene. The officer and two civilians broke up the fight, and soon other law enforcement officers arrived.
Officer Sherry Thompson of the Lynn Haven Police Department was one of the officers dispatched to the scene. When Officer Thompson arrived, the occupants of both trucks were still out in the middle of the street. Thompson had the vehicles moved out of the way and picked up some articles and put them in the trunk of her car. She noticed that Clark was bleeding and was being treated by emergency medical *277 technicians. At that time, Thompson did not know how Clark had been injured.
The defendant testified in a proffer that when Officer Thompson approached him, she told him to move his truck into the parking lot and to wait for her there. Officer Thompson did not recall the conversation in the same way. She said that she asked the defendant to move his truck, but that he was free to leave if he wished. In any event, Officer Thompson subsequently walked over to the defendant and asked, "what happened?" She did not advise the defendant of his constitutional rights before asking this question, but she explained that she considered it unnecessary, because the defendant was not under arrest at the time.
In response to the officer's question, the defendant said that he thought Clark might be drunk and that he feared Clark might injure someone. He said that he asked Clark what his problem was, and then the two men exchanged words. The defendant told Officer Thompson that Clark pulled out a baseball bat and hit him in the arm with the bat. However, he admitted to the officer that he grabbed the rake and hit Clark in the arm with it as Clark was getting back into his truck to leave.
The defendant moved to suppress this statement on the ground that the officer had failed to advise him of his constitutional rights. He argued that a Miranda warning was required because the statement was made while he was officially detained by the police. The trial court assumed that the officer had asked the defendant to remain at the scene but, nevertheless, denied the motion to suppress. The court found that the defendant was not in custody and therefore held that the officer was under no duty to give a Miranda warning.
At trial, defense counsel argued that Clark was the aggressor and that the defendant had acted in self-defense. The defendant's son testified that Clark jumped out of his truck and struck the defendant with the baseball bat while the defendant was still seated in his own truck. He said that he saw the defendant hit Clark with the rake, but that Clark had the baseball bat in his hand at the time. The state countered this claim in part with the defendant's admission to Officer Thompson that he struck Clark with the rake as Clark was getting back into his truck.
The jury found the defendant guilty as charged of aggravated battery, and the trial court sentenced him to seven years in the Department of Corrections followed by eight years' probation. Subsequently, the defendant filed an appeal to this court to seek review of his conviction. Here, as in the trial court, the defendant challenges the admissibility of the inculpatory statement to Officer Thompson.
As a general principle, a police officer is required to advise a suspect of his or her constitutional rights if the suspect is in police custody and if the questioning amounts to an interrogation. See Davis v. State, 698 So.2d 1182 (Fla.1997); Caso v. State, 524 So.2d 422 (Fla.1988). We need not decide whether the officer's questioning in the present case qualifies as an interrogation, because the record supports the trial court's finding that the defendant was not in custody.
Whether a suspect is in custody is determined by an objective standard. The Florida courts consider: (1) the manner in which police have summoned the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect was confronted with evidence of guilt; and (4) whether the suspect was informed of a *278 right to leave the place of questioning. See Ramirez v. State, 739 So.2d 568 (Fla. 1999); Mansfield v. State, 758 So.2d 636 (Fla.2000). This test focuses on the circumstances of the restraint in a particular case, and not on official characterizations of the suspect's status.
The defendant argues that a reasonable person in his position would have interpreted the officer's command to wait in the parking lot as a detention and would not have considered it appropriate to leave the scene. That may be true, but a detention such as this is not necessarily the kind of police custody that triggers the need for a Miranda warning. The supreme court said in Ramirez that a suspect is in custody "if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest." 739 So.2d at 573 (emphasis supplied). It follows that there are some forms of restraint that do not require a Miranda warning. As the court explained in Ramirez, a warning would be necessary only if the restraint is like that associated with an arrest.
This qualification of the custody element also appears in the Miranda decision itself. There, the Court said:
[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.
Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). It appears then that the Court has equated the term "custody," as used in this context, with a significant deprivation of freedom. The Court did not suggest that police officers must give a Miranda warning every time they have restrained a person's freedom of movement in some way.
The meaning of the term "custody" must also be considered in light of the reasons the Supreme Court gave for requiring police officers to inform suspects of their constitutional rights. In the Miranda case, the court expressed its concern that police officers had been routinely using physical and psychological tactics to overcome the will of a suspect. Because the interrogations often took place at a police station or in some other controlled environment, the suspect could not easily prove that a statement was the product of pressure or coercion. Ultimately, the Court concluded that police interrogation techniques might effectively undermine the privilege against self-incrimination.
The concerns that prompted the Court to require police officers to warn citizens of their constitutional rights are not present if the police are out in public questioning a person who is not yet a suspect. As the Court explained in Miranda, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.... In such situations, the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477-478, 86 S.Ct. at 1629-1630.
This general theme has been restated in subsequent decisions of the United States Supreme Court dealing more directly with the custody element. For example, in Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court held that a statement given by a motorist who had been detained in a traffic stop could be admitted in evidence even though the police did not advise him of his *279 constitutional rights. The Court held that the motorist was not in custody for two reasons: (1) a traffic stop is brief and the detainee has an expectation he will be released; and (2) the circumstances of a traffic stop are such that the motorist is not completely at the mercy of the police. In support of this holding, the Court said that "questioning incident to an ordinary traffic stop is quite different from station-house interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." Id. at 468 U.S. 438, 104 S.Ct. 3138.
By implication, the court also concluded in Berkemer that a person who is detained on a reasonable suspicion under the rule in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is not necessarily in custody within the meaning of the Miranda decision. The Court analogized a roadside traffic stop to a Terry detention and then said that "[t]he comparatively nonthreatening character of detentions ... explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda." 468 U.S. at 440, 104 S.Ct. at 3150.
Following the Berkemer decision, the state and federal courts have held a detention based on reasonable suspicion does not invariably amount to custody for the purpose of requiring a Miranda warning. See Cruz v. Miller, 255 F.3d 77 (2d Cir.2001); United States v. Bengivenga, 845 F.2d 593 (5th Cir.1988); State v. Elison, 302 Mont. 228, 14 P.3d 456 (2000); People v. Morales, 65 N.Y.2d 997, 494 N.Y.S.2d 95, 484 N.E.2d 124 (1985); State v. Easier, 327 S.C. 121, 489 S.E.2d 617 (1997); see generally Wayne R. LaFave et. al., Criminal Procedure § 6.6(e) (1999). These precedents reveal the fallacy in the defendant's argument. He assumes that a detention activates a duty on the part of the police officers to give a Miranda warning, but that is not necessarily correct.
Although the defendant was briefly detained by the police, he was not in custody and therefore not entitled to be warned of his constitutional rights. Officer Thompson's conduct does not approach the kind of evil the Court had in mind when it decided the Miranda case. Here, the officer asked the defendant to remain at the scene of an altercation, in full view of the public, and then asked him an open-ended question, "what happened?" The defendant was not isolated or confronted, and it was clear that the detention was for a limited purpose.
Our conclusion that the detention in this case is not the equivalent of police custody is also based on a practical interpretation of the Miranda decision. When police officers are called to the scene of an altercation, as they were in this case, they are initially concerned with issues of traffic control and public safety. Here, the officers were trying to clear the roadway and to sort through the basic facts. It would be unrealistic to require the officers to give every injured person and every potential witness a Miranda warning in a situation like this merely because one of them might eventually be charged with a crime.
For these reasons, we conclude that the defendant's statement to Officer Thompson was properly admitted in evidence. Because the defendant had not been arrested and was not in custody within the meaning of the Miranda decision, the officers were not required to advise him of his constitutional rights.
Affirmed.
BOOTH and KAHN, JJ., concur.