920 So.2d 802 (2006)
Claire L. HEWITT, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-2462.
District Court of Appeal of Florida, Fifth District.
February 17, 2006.
*803 James S. Purdy, Public Defender, and Rebecca M. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, C.J.
Hewitt appeals her convictions for possession of cannabis and possession of cocaine. She challenges the lower court's denial of her motion to suppress, arguing that the police improperly initiated custodial interrogation without warning her of her constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] We disagree and affirm.
After legally stopping Hewitt's car for a traffic violation, Officer Grace Peek of the Orlando Police Department Uniform Drug Patrol Unit approached Hewitt and asked to see her driver's license. Hewitt stated she did not have one and had never been issued one. Peek then asked Hewitt to step out of her car, which Hewitt did. For officer safety reasons, Peek asked Hewitt if she had a gun, knives or drugs on her person. Hewitt started crying and said she had some "weed" on her. Hewitt retrieved two bags of marijuana. Officer Peek then arrested Hewitt. Upon searching Hewitt incident to arrest, Peek found a bag containing 14 grams of cocaine in Hewitt's possession. Officer Peek did not *804 Mirandize Hewitt before asking her if she had any drugs.
Four or five other members of the Drug Patrol Unit were present during the stop. Neither Officer Peek nor any of the other officers present threatened, yelled at, drew their guns on or flashed their spotlights at Hewitt. At the point she asked Hewitt about drugs, Officer Peek did not intend to arrest Hewitt for not having a driver's license, but Hewitt was not free to leave because Officer Peek was investigating the status of her driver's license. Peek later wrote Hewitt a traffic citation for failure to stop and a criminal citation for driving without a valid driver's license.
After hearing argument, the lower court denied the motion to suppress, reasoning as follows:
Okay. As to the second issue of whether the defendant was in custody at the time that the question was asked, do you have any guns or drugs on you, that really is a close call. And it  the  the case falls factually between Fowler v. State, which you cited, and another case, State v. Dykes. The only distinction between this case and Dykes is that, in Dykes, the defendant was still in the car, apparently, when the questioning was asked or  I  I don't remember exactly  or else the defendant voluntarily got out of the car. And so the question really is, whether, by asking the defendant to step out of the car incident to the traffic stop, that turns a routine traffic stop into a custodial situation for Miranda purposes. This case really is right between the two, and I don't see a case that is directly on point. But in my view, I don't think that simply, for officer safety, asking someone to exit the vehicle during the traffic stop turns the encounter into a custodial encounter, and, therefore, Miranda warnings were not required. And based on State v. Stone, at 889 So.2d 999, an officer can ask the question about whether a defendant has drugs or weapons on his or her person.
We believe the lower court reached the correct conclusion. In Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court held that "persons temporarily detained pursuant to [routine traffic] stops are not `in custody' for the purposes of Miranda." Miranda warnings are only required when a suspect's freedom of action is curtailed to a "degree associated with formal arrest." Id. (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). Therefore, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id.; see also Johnson v. State, 800 So.2d 275 (Fla. 1st DCA 2001).
The critical question then is whether, at the time Officer Peek initiated questioning, Hewitt was merely being temporarily detained pursuant to a routine traffic investigation or had been "subjected to treatment" to the extent her freedom of action was curtailed to a degree associated with formal arrest. In determining whether a suspect is in custody, Florida courts consider: (1) the manner in which police have summoned the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect was confronted with evidence of guilt; and (4) whether the suspect was informed of a right to leave the place of questioning. Ramirez v. State, 739 So.2d 568 (Fla. 1999).
*805 Officer Peek asked Hewitt to step out of her car. Then, for officer safety reasons, Peek asked Hewitt if she possessed a gun, knives or drugs. The questioning took place by the side of Hewitt's car during a traffic stop. Officer Peek asked Hewitt a routine question and did not confront her with any evidence of guilt. At this point, Hewitt may well have believed she would be arrested perhaps because she possessed a large amount of illicit drugs. But Hewitt's subjective belief is irrelevant. See State v. Scott, 786 So.2d 606, 608 (Fla. 5th DCA 2001). The test is how a reasonable person would have perceived the situation. We believe that a reasonable person in Hewitt's shoes would not have believed she was going to be arrested merely because a police officer asked her to step out of her vehicle and then asked a standard question for officer safety purposes. A reasonable person, not in possession of illicit drugs, would not have believed he or she would be arrested merely for driving without a valid driver's license.
Hewitt relies on Fowler v. State, 782 So.2d 461 (Fla. 2d DCA 2001). In Fowler, a police officer stopped a car with a broken tail light. While verifying the driver's license and registration information, the officer learned from the dispatcher that police had received calls about the driver selling drugs in parks. At that point, the officer directed the driver to step out of the vehicle. Two other officers arrived to provide back-up. At the rear of the vehicle, the officer told the driver that he heard he had been selling drugs in the parks and asked if he had anything on him. The driver responded that he did and retrieved cocaine from his pocket. Based on these facts, the appellate court reversed the defendant's conviction, finding that the officer should have Mirandized the defendant prior to custodial interrogation. Id. at 462.
The lower court properly distinguished the facts in Fowler, which began as a temporary detention pursuant to a routine traffic stop, but escalated when the defendant was "subjected to treatment" which rendered him in custody. Specifically, after receiving information that the defendant had been selling drugs, the police officer "directed" the defendant out of the car and moved him to the rear of the car. In the presence of two other officers, the officer confronted the defendant with allegations that he had been seen selling drugs. At this point, the officer asked the defendant if he had any drugs in his possession. Clearly, a reasonable person in that position would have believed he was in custody. Consequently, Fowler offers little support to Hewitt.
Finally, Hewitt urges this Court to consider the additional fact that Officer Peek and the other officers were part of a drug unit looking to make drug arrests. However, courts do not focus on some "unarticulated plan of the police," but rather what a reasonable person in the suspect's position would have believed. Ramirez, 739 So.2d at 575.
AFFIRMED.
SHARP, W., and TORPY, JJ., concur.
NOTES
[1] Hewitt also argues that the police illegally stopped her but that issue does not merit discussion.