948 So.2d 995 (2007)
STATE of Florida, Appellant,
v.
Joshua OLAVE, Appellee.
No. 4D06-2889.
District Court of Appeal of Florida, Fourth District.
February 21, 2007.
*996 Bill McCollum, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellant.
No appearance for appellee.
SHAHOOD, J.
The State of Florida appeals the trial court's ruling granting Joshua Olave's motion to suppress evidence he alleges was illegally obtained as the result of custodial interrogation. We reverse.
Officer Guy Prosper ("Prosper") of the Coral Springs Police Department was working the evening shift as a patrol officer at around 11:00 p.m. when he observed a white van with the taillight out. Prosper stopped the van which was being driven by Olave.
Prosper asked Olave for his driver's license and Olave provided it. Prosper ran a check of the license by radio and the status of the license came back restricted to "business purposes only." Prosper inquired if Olave was on his way to work, and Olave said he was on his way to Port St. Lucie. Prosper asked if Olave was going to work, and Olave said that he worked the next day at one o'clock. Officer Matthew Brilakis ("Brilakis") arrived as backup. Prosper informed Brilakis that he had stopped Olave for the taillight violation. He also told Brilakis about the license restriction.
Prosper asked Olave to step out of the van and stand alongside the road with Brilakis. Prosper testified he did this for safety reasons. Prosper left Olave talking with Brilakis while Prosper went back to his squad car to further check the status of Olave's driver's license by running it through a computer. As Prosper returned, he heard Brilakis ask appellant if he had any drugs or weapons in his pockets. Olave responded that he had some pills in his pocket. Brilakis asked Olave if Olave would consent to a search of his person. Olave consented. Brilakis found one and one-half pills of Xanax in Olave's left front pocket. Olave was not given Miranda warnings prior to Brilakis asking him if he had anything in his pockets.
Olave was cited for the misdemeanors of violation of a driver's license restriction and driving with defective equipment. He was charged by information with one count of possession of alprazolam.
Olave filed a motion to suppress the statements and evidence obtained as a result of the stop. Olave argued that it was unreasonable for Prosper to have asked Olave to exit his vehicle and that the failure to give him Miranda warnings resulted in an illegal custodial interrogation. The trial court suppressed the evidence. The trial court found that Olave was "clearly detained" when Prosper asked him to exit the vehicle, the consent given to Brilakis was not voluntary, and the resulting search was illegal.
It is axiomatic that the trial court's ruling on a motion to suppress is presumed correct; therefore, the reviewing court's task is to interpret the evidence, including reasonable inferences, in the manner most favorable to sustaining the trial court's ruling. McNamara v. State, 357 So.2d 410 (Fla.1978); Porter v. State, 765 So.2d 76, 77 (Fla. 4th DCA 2000).
*997 The initial stop of Olave for driving with a broken taillight was proper and was not contested. See State v. Breed, 917 So.2d 206, 208 (Fla. 5th DCA 2005). In addition, Prosper did not violate the Fourth Amendment by asking Olave to exit his vehicle. Florida courts have followed the holding of the United States Supreme Court in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that police may ask drivers to exit their vehicles as a matter of routine procedure for police safety during traffic stops. See, e.g., Breed, 917 So.2d at 208; Moore v. State, 874 So.2d 42, 43 (Fla. 2d DCA 2004).
In Hewitt v. State, 920 So.2d 802, 803 (Fla. 5th DCA 2006), Orlando Police legally stopped Hewitt's car for a traffic violation. The officer conducting the stop asked for Hewitt's driver's license, and Hewitt admitted she was driving without a valid license. Id. at 803. The officer asked Hewitt to step out of her car, which Hewitt did. "For officer safety reasons, [Officer] Peek asked Hewitt if she had a gun, knives or drugs on her person. Hewitt started crying and said she had some `weed' on her." Id. The officer retrieved the marijuana, arrested Hewitt, and conducted a search incident to arrest that also revealed cocaine. Id. The trial court denied the motion to suppress. Id. at 804.
The Fifth District upheld the trial court's ruling, reasoning that "[t]he critical question then is whether, at the time Officer Peek initiated questioning, Hewitt was merely being temporarily detained pursuant to a routine traffic investigation or had been `subjected to treatment' to the extent her freedom of action was curtailed to a degree associated with formal arrest." Id. The court held that Hewitt was not under arrest because a reasonable person in her situation would not have believed they would be arrested merely for driving without a valid driver's license. Id. at 805; see also State v. Dykes, 816 So.2d 179, 180 (Fla. 1st DCA 2002)(reversing grant of motion to suppress responses to questioning where police pulled Dykes over for routine traffic stop and one officer briefly questioned him while other officer wrote traffic citation, on basis that roadside questioning alone does not trigger Miranda warnings).
As in Hewitt, police in this case pulled over Olave for a valid reason and then discovered another possible violation that provided a legitimate reason to detain and further investigate. The trial court found that the encounter turned into an investigatory stop. Like the Fifth District in Hewitt, we find that this did not prevent the police from asking Olave questions without giving Miranda warnings. See Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); United States v. Shabazz, 993 F.2d 431, 436 (5th Cir.1993)(holding that because mere questioning is neither a search nor a seizure, an officer does not violate Fourth Amendment by asking questions unrelated to the traffic stop so long as traffic stop is not unduly prolonged as a result); State v. Poster, 892 So.2d 1071, 1072 (Fla. 2d DCA 2004); Dykes, 816 So.2d at 180. We conclude that Olave was not subjected to custodial interrogation and his admission that he possessed Xanax provided probable cause to search him.
Based on the foregoing, we reverse the order granting Olave's motion to suppress evidence and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
STEVENSON, C.J., and KLEIN, J., concur.