SILBERMAN, Judge.
 

 The State appeals an order suppressing statements Mauro A. Martissa made without Miranda
 
 [1]
 
 warnings in this prosecution for possession of cocaine and driving while license suspended or revoked. Because
 
 Miranda
 
 warnings were not required during this traffic stop that evolved into an investigatory detention, we reverse the suppression order and remand for further proceedings.
 

 At the suppression hearing, Officer Hils-don testified that on September 19, 2007, Officer Bradshaw was working in a covert capacity observing people who came and went from a suspected drug house. Officer Hilsdon received information from Officer Bradshaw that the vehicle Martissa was driving was seen at the location. Officer Hilsdon, a uniformed officer, observed the vehicle, and it did not have a functional tag light. Officer Hilsdon initiated a traffic stop for the violation. The parties do not dispute that Officer Hilsdon made a valid traffic stop.
 

 When Officer Hilsdon asked Martissa for his driver’s license and registration, Martissa informed the officer that his license was suspended and that “he was still trying to pay some fines to get it back again.” Officer Hilsdon testified that he would have to go back to his patrol car to confirm that Martissa’s license was suspended before he could arrest him.
 
 [2]
 
 He did not handcuff Martissa, but he was keeping Martissa there until he confirmed whether the license was suspended. He acknowledged that Martissa was being detained on the basis of the traffic stop.
 

 Before Officer Hilsdon returned to his patrol car, he asked Martissa to exit the vehicle so that the backup officer could stand with Martissa while Officer Hilsdon ran the information. Officer Hilsdon further testified, “And as he was exiting the vehicle I advised him that he was observed leaving an area known for the sale of illegal narcotics, and I asked him if he had any illegal narcotics on him.” Martissa responded that he did and told the officer that he had crack cocaine in the vehicle. Officer Hilsdon explained that he asked
 
 *51
 
 Martissa like he asks every person they stop as part of the street crimes unit if the person has anything illegal on him or in the vehicle.
 

 Officer Hilsdon confirmed that Martis-sa’s license was suspended, so the officer believed he had probable cause to arrest Martissa on the suspended license and on his statement that he had cocaine in the vehicle. Officer Hilsdon searched the vehicle based on both of those grounds and recovered crack cocaine. Martissa was charged with possession of cocaine and the second-degree misdemeanor of driving while license suspended or revoked.
 

 The trial court suppressed Martissa’s statements regarding illegal drugs contained within the vehicle. The trial court found that the detention regarding the suspended license “was pursuant to an ongoing criminal investigation and that the Defendant was in custody for practical purposes.” The court further found that before reading Martissa his
 
 Miranda
 
 rights, Officer Hilsdon “confronted the Defendant with the information that he had been seen in a known drug area and asked him if he was in possession of any illegal drugs.” The trial court found that Martis-sa was subjected to custodial interrogation, relying upon
 
 Fowler v. State,
 
 782 So.2d 461 (Fla. 2d DCA 2001).
 

 At issue is whether Martissa was in custody for purposes of
 
 Miranda
 
 when Officer Hilsdon asked if Martissa “had any illegal narcotics on him.” Of course,
 
 Miranda
 
 warnings are required before police conduct a custodial interrogation of a suspect.
 
 See Rigterink v. State,
 
 2 So.3d 221, 242 (Fla.2009),
 
 petition for cert. filed,
 
 No. 08-1229, 77 U.S.L.W. 3563 (Mar. 31, 2009);
 
 Ramirez v. State,
 
 739 So.2d 568, 573 (Fla.1999).
 

 In
 
 Berkemer v. McCarty,
 
 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court likened a routine traffic stop to an investigatory detention under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court explained that in a
 
 Terry
 
 stop
 

 the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. But the detainee is not obliged to respond. And, unless the detainee’s answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that
 
 Terry
 
 stops are subject to the dictates of
 
 Miranda.
 
 The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not “in custody” for the purposes of
 
 Miranda.
 

 468 U.S. at 439-40, 104 S.Ct. 3138 (footnotes omitted). However, a detained motorist is entitled to the protections of
 
 Miranda
 
 if the motorist is “subjected to restraints comparable to those associated with a formal arrest.”
 
 Id.
 
 at 441, 104 S.Ct. 3138. This court has recognized that “[a] temporary detention upon founded suspicion of criminal activity does not always require
 
 Miranda
 
 warnings.”
 
 State v. Poster,
 
 892 So.2d 1071, 1072 (Fla. 2d DCA 2004) (citing
 
 Berkemer,
 
 468 U.S. 420, 104 S.Ct. 3138). Instead, “the question should be ‘whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.’ ”
 
 Id.
 
 (quoting
 
 United States v. Acosta,
 
 363 F.3d 1141, 1149 (11th Cir.2004)). The question is viewed from the perspective
 
 *52
 
 of “how a reasonable person in the suspect’s position would understand the situation.”
 
 Id.
 

 In
 
 Fowler,
 
 during a valid traffic stop the dispatcher advised the officer “that the police had received calls about Fowler selling drugs in the parks.” 782 So.2d at 462. The officer testified that he directed Fowler to get out of the vehicle because he wanted to ask Fowler a question. The officer “told Fowler that he heard he had been selling drugs in the parks and asked if he had anything on him.”
 
 Id.
 
 Fowler responded in the affirmative, and the officer said, “You want to give it to me?”
 
 Id.
 
 Fowler then gave the officer rock cocaine from his pocket. This court determined that Fowler was subjected to custodial interrogation and that he gave the officer the cocaine in acquiescence to the officer’s authority.
 
 Id.
 

 The present case is similar, but Officer Hilsdon did not directly confront Martissa with an allegation that he had actually committed a drug crime. Rather, while conducting an investigatory detention on the suspended license, Officer Hils-don told Martissa that “he was observed leaving an area known for the sale of illegal narcotics” and asked if Martissa “had any illegal narcotics on him.” During a traffic stop an officer may ask if a person is in possession of a weapon or drugs.
 
 See Hewitt v. State,
 
 920 So.2d 802, 805 (Fla. 5th DCA 2006);
 
 see also State v. Stone,
 
 889 So.2d 999, 1000 (Fla. 5th DCA 2004) (stating that a stop was not “prolonged in any meaningful sense” by an officer asking the defendant if he possessed weapons or drugs).
 

 In another similar case,
 
 State v. Olave,
 
 948 So.2d 995 (Fla. 4th DCA 2007), the Fourth District reversed a suppression order. There, an officer stopped Olave for a taillight violation, and during the stop, the officer discovered that Olave’s driver’s license was restricted to work purposes. The officer asked Olave to step out of the vehicle and left him with a second officer while he did a further check on the license. The second officer asked Olave “if he had any drugs or weapons in his pockets.”
 
 Id.
 
 at 996. Olave admitted that he had some pills in his pocket that turned out to be Xanax.
 

 The Fourth District recognized that the traffic stop had turned into an investigatory detention based on the discovery of the license restriction.
 
 See id.
 
 at 997. The court determined that the investigatory detention “did not prevent the police from asking Olave questions without giving
 
 Miranda
 
 warnings.”
 
 Id.
 
 The court observed that the police had “pulled over Olave for a valid reason and then discovered another possible violation that provided a legitimate reason to detain and further investigate.”
 
 Id.
 
 The court concluded “that Olave was not subjected to custodial interrogation and his admission that he possessed Xanax provided probable cause to search him.”
 
 Id.
 

 In the present case, Martissa was directed to step out of his vehicle to stand with a second officer while Officer Hilsdon investigated the status of Martissa’s license. Before Officer Hilsdon asked if Martissa had any illegal narcotics on him, Officer Hilsdon told Martissa that he had been seen leaving an area known for the sale of illegal drugs. That factor was not present in
 
 Olave,
 
 while in
 
 Fowler
 
 the officer specifically confronted Fowler with committing a drug crime, based on calls the police had received about Fowler selling drugs.
 

 We conclude that Martissa was not in custody for
 
 Miranda
 
 purposes. Martissa was not subjected to restraints during the stop that were comparable to the restraints associated with a formal arrest.
 
 See Berkemer,
 
 468 U.S. at 441, 104 S.Ct. 3138. Unlike the officer in
 
 Fowler,
 
 Officer
 
 *53
 
 Hilsdon did not accuse Martissa of committing a drug crime. Rather, the circumstances of Martissa’s detention did not exert pressure that would sufficiently impair a detainee’s free exercise of his privilege against self-incrimination to require that he be given
 
 Miranda
 
 warnings.
 
 See Poster,
 
 892 So.2d at 1072. Therefore, we reverse the suppression order and remand for further proceedings.
 

 Reversed and remanded.
 

 LaROSE, J., Concurs.
 

 KELLY, J., Concurs in result only.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . Officer Hilsdon explained that he has had other instances where he stopped someone for a traffic infraction and the person stated that his or her license was suspended. Then, when Officer Hilsdon checked that information, he had discovered that the license was valid and not suspended.