# Third District Court of Appeal

## State of Florida

Opinion filed October 29, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0657
Lower Tribunal No. M21-23621
_____

**State of Florida,**
Appellant,

vs.

**Eddie Poke,**
Appellee.

An Appeal from a non-final order from the County Court for Miami-Dade County, Betsy Alvarez-Zane, Judge.

James Uthmeier, Attorney General, and Katryna Alexis Santa Cruz, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Andrew Stanton, Assistant Public Defender, for appellee.

Before SCALES, C.J., and MILLER and BOKOR, JJ.

BOKOR, J.

The State appeals the trial court's order granting defendant Eddie Poke's motion to suppress statements made and physical evidence discovered during a traffic stop. We have jurisdiction. Fla. R. App. P. 9.140(c)(1)(B). Because the trial court improperly found the evidence barred under Miranda,[1] we reverse and remand.

## I.     Background

On June 6, 2021, Sergeant Jose Bonilla pulled over Poke's vehicle after determining that Poke's license plate was expired. The sergeant approached the window, informed Poke of the purpose of the stop, and asked if there were any firearms inside the vehicle. Poke replied that his license was suspended and that he had a rifle in a black duffel bag on the back seat. The duffel bag was in plain sight on the back seat of the vehicle on the driver's side. The sergeant then asked Poke if he had a concealed weapon permit, radioed a "Code 55" to dispatch,[2] and asked Poke to exit the car.

After Poke exited, the sergeant frisked him and asked him to sit on the front bumper of the police car while searching the vehicle. The sergeant also asked Poke if the weapon was his, to which he responded affirmatively. The

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] "Code 55" references a weapons violation.

2

sergeant then opened Poke's vehicle and opened the duffel bag, discovering a loaded, unsecured AR-15 rifle. After informing Poke that the weapon was not properly stored, the sergeant informed Poke that he was going to detain him and placed him in handcuffs. While Poke was handcuffed, the sergeant asked him additional questions about the weapon and if Poke had anything else in the vehicle he should be concerned about. Poke indicated that there was a "burned roach" of marijuana in the vehicle, and the sergeant responded that he smelled it. The officer asked again if there were any other firearms or anything else he should be concerned about, to which Poke answered in the negative. After backup arrived, the sergeant searched the vehicle and discovered an open, part-full bottle of Olde English malt liquor in a bag on the passenger seat.

Poke was subsequently arrested and charged with driving with a suspended license, carrying an unlicensed concealed firearm, and possessing an open container of alcohol in the vehicle. He moved to suppress both physical evidence found during the search of the vehicle (the open container) and allegedly incriminating statements made during the stop, claiming that they resulted from an improper custodial interrogation without Miranda warnings. The trial court agreed, finding that Poke was in custody for Miranda purposes from the time the sergeant reported the Code

3

55. The trial court reasoned that all statements and physical evidence recovered after that point must be suppressed.

## II. Analysis

The grant of suppression was error.[3] "<u>Miranda</u> warnings apply only to *in*-custody interrogations," which refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Ross v. State</u>, 45 So. 3d 403, 414–15 (Fla. 2010) (quoting in part <u>Miranda</u>, 384 U.S. at 444). But not every interaction with the police constitutes an arrest. <u>See</u> <u>Ramirez v. State</u>, 739 So. 2d 568, 573 (Fla. 1999) ("A person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest. The proper inquiry is not the unarticulated plan of the police, but rather how a reasonable person in the suspect's position would have perceived the

---

[3] "This Court's review of the suppression order involves a mixed question of law and fact; the trial court's factual findings are presumed correct if supported by competent, substantial evidence, while we review, *de novo*, the trial court's ruling on the legality of the search." <u>State v. Harris</u>, 273 So. 3d 1100, 1101 (Fla. 3d DCA 2019). "[A] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." <u>Id.</u> (quoting <u>Pagan v. State</u>, 830 So. 2d 792, 806 (Fla. 2002)).

situation." (citations omitted)); <u>Caldwell v. State</u>, 41 So. 3d 188, 198 (Fla. 2010) ("We emphasize that <u>Miranda</u> warnings are not required in any police encounter in which the suspect is not placed under arrest or otherwise in custody under <u>Ramirez</u>.").

Here, a law enforcement officer pulled a driver over for an expired license plate, asked questions about his license, and asked if he had any weapons in the vehicle—all reasonable inquiries related in scope to the purpose of the stop and officer safety during the stop. Questioning whether there were any firearms in the vehicle didn't convert the encounter into an arrest for <u>Miranda</u> purposes. <u>State v. Martissa</u>, 18 So. 3d 49, 52 (Fla. 2d DCA 2009) (finding that defendant was not in custody when asked about illegal substances in vehicle during temporary detention to investigate suspended license). Once Poke responded to the inquiries and confirmed that his license was suspended and that he had a concealed weapon in a duffel on the driver's side back seat, the sergeant instructed Poke to exit his vehicle and wait on the bumper of the police cruiser. The sergeant then secured the firearm. This was not equivalent to a custodial detention. This is so because "the usual traffic stop is more analogous to a so-called '<u>Terry</u>[4] stop' than to a formal arrest. . . . [P]ersons temporarily detained pursuant to such stops are

---

[4] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

not 'in custody' for the purposes of <u>Miranda</u>." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439–40 (1984) (citations omitted).

The sergeant then examined the duffel bag and noted that the bag wasn't zipped closed and that the firearm wasn't properly stored. When pointing out to Poke that the firearm wasn't properly stored, Poke walked toward the sergeant. The sergeant told Poke to stay where he was and then placed Poke in handcuffs.

Soon after handcuffing Poke, another officer arrived. The sergeant then searched the remainder of the vehicle, discovering the open container. The "automobile exception" to the Fourth Amendment's warrant requirement provided a basis for the search of the vehicle. <u>See</u> <u>Jones v. State</u>, 279 So. 3d 342, 347 (Fla. 5th DCA 2019) ("There are three ways by which law enforcement officers may validly conduct a warrantless search of a motor vehicle. They are: (1) incident to a lawful arrest of a recent occupant of the vehicle; (2) the 'automobile exception,' based on probable cause that the vehicle contains contraband or other evidence of a crime; and (3) pursuant to an inventory search."); <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

Poke fails to identify a basis for suppression of the evidence. This is so even if we agreed that the traffic stop morphed into an arrest at some point after Poke revealed he had a concealed firearm in the vehicle. The search of the vehicle would have been permitted anyway, as a search incident to a lawful arrest, and the same items recovered. See Jones, 279 So. 3d at 347; see also State v. Ojeda, 147 So. 3d 53, 65 (Fla. 3d DCA 2014) (explaining that "under the inevitable discovery doctrine, evidence otherwise subject to suppression can be admitted if the State shows that the officers ultimately would have discovered the evidence independently of the improper police conduct by means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure" (quotations omitted)). We therefore reverse the order of suppression and remand for further proceedings.

Reversed and remanded.